Good morning, your honors, and may it please the court, Barbara Smith and Lee Marshall for Mrs. Crain, who's here in the audience with us today. This is a breach of contract action in which the defendant is not a party to the contract and everyone agrees that she did not breach it. Further, the contract alleged to have been breached by someone else to the detriment of these plaintiffs is a property settlement agreement entered into as part and parcel of a divorce. And finally, the harm that the plaintiffs allege in this case is that a third party failed to make an adequate will for their benefit. If that sounds unlike the type of case this court normally hears, that's because it is. And the reason for that is simple. This court lacks jurisdiction over this type of breach of contract dispute, which is squarely in the province of state courts. We made three jurisdictional arguments in our briefs, not because, as the other side suggests, we are desperate, but rather because the underlying order is flawed in so many fundamental respects. First, the plaintiffs in this case lack standing. They cite no case, and I can think of no example in which, a non-party to a contract who did not breach the contract can be sued in federal court for breach of contract. Rather than address that causation problem head on, that is, Mrs. Crain didn't cause any of the harm of which they allege, namely the breach of contract, they instead cite to an alleged parade of horribles that would follow if this court found that there were no standing in this case. But their parade of horribles, they claim, is that a third party could never be compelled to turn over property that they innocently obtained because they innocently obtained it. But that's precisely why unjust enrichment claims exist. The plaintiffs in this case chose not to bring an unjust enrichment or any other quasi-contract action against Mrs. Crain. Can constructive trust be a remedy, though, counsel, that can reach third parties in chasing proceeds? In an unjust enrichment claim, they can, but as a matter of Arkansas law, a constructive trust is not a proper remedy for a breach of contract action. Never? Is it a never state? Never? It is a never state, and I'm happy to walk you through why. Although there's no Arkansas Supreme Court case that strings these two propositions together, both are clearly established by the Arkansas Supreme Court. The first is the idea that breach of contract allegations and quasi-contract claims like unjust enrichment are exclusive. The second is the idea that a constructive trust is a remedy for an unjust enrichment claim. So Stokes versus Stokes, which is from 2016, says there can be no unjust enrichment in contract cases, because unjust enrichment is a quasi-contract claim. Servewell Plumbing from the Arkansas Supreme Court in 2005 says the concept of unjust enrichment quote, has no application when an express contract exists. And then tying those two propositions together, Betts versus Best from the Arkansas Supreme Court in 1996, constructive trust is a remedy for unjust enrichment. So if on the one hand, you have exclusive breach of contract or unjust enrichment claims, and on the other hand, you have the Supreme Court saying constructive trust is a remedy for unjust enrichment, putting those together, you cannot have constructive trust as a remedy for breach of contract. And that's precisely what the federal district court in Arkansas said in Morrison versus MC Express. It said these two propositions have never expressly been strung together by the Arkansas Supreme Court, but they both separately exist. The basis of constructive trust is unjust enrichment, and unjust enrichment occurs when there's no contract between the parties. That's obviously not a jurisdictional problem, and I think the court needs to address the standing and domestic relations exception questions before it gets there. But when it does, if it does, it could also find that the error below was wrong for two other substantial reasons. First, the court erred in its interpretation of the meaning of the term estate in the property settlement agreement. That's basic contract construction that the district court fumbled. Was it raised? Was that question raised? Because that's the question that I was about to ask, whether there was any inquiry as to what the term means in the property settlement agreement. And you say the district court didn't decide the issue, but did someone raise it? Did someone ask the district court to interpret the property settlement agreement? Yes, Your Honor. The parties below vigorously contested the question whether the assets at issue that were supposed to have been conveyed via will were either probate assets, as we argue, or all of Mr. Crane's assets, including non-probate assets. So when the court's looking at the promise made in the PSA, and it looks at the term estate, it has to be informed by the words that surround that term, including the promise to make a will, which they claim is the entire basis of their case, and the word whereby. In other words, I promise to make a will whereby, through which, I will convey half of my estate. As a matter of basic Arkansas hornbook property law, non-probate assets cannot pass through will and are not part of an estate. They don't address that argument at all in their reply, because there's no Arkansas law they can use to rely on to do that. That is a fundamental problem with the lower court's interpretation of that term below. Now, I thought the court did rule on the issue, in effect, by all the rest of everything that the district court said. Tell me if I don't get the point here. I ruled on the estate, what the estate is point. Did you just say the district court didn't rule on that at all? I'm sorry. That's certainly not what I intended to say. The district court entered a constructive trust over both probate assets and non-probate assets, estate property and non-estate property. There's no question. But did the district court directly address what a state meant? That's what I'm driving at. Yes. Okay. Thank you. Proceed. In the context of what is the scope of the remedy I can employ here, what are the assets that my remedy can trust, can touch? The way that happened was perhaps complicated because it was twofold below. There was a summary judgment question on the alleged breach, and then there was the separate trial on damages. But in either event, I think that the error in contract construction on the meaning of the term estate itself is a significant error that if the court had jurisdiction to review it- I'm sure there were parties at the time that the property settlement was executed and envisioned by the attorneys that the term estate, the use of that term here, could result in one party or the other divesting themselves during their life of the bulk of their assets so that their probate estate would be very, very small. Well, I certainly think that the Arkansas attorneys who represented the parties in the PSA understood the meaning of the term estate as a matter of Arkansas law, and I believe probably contemplated that millions of dollars would be transferred before Mr. Crane's death to avoid estate taxes, which obviously occurred here. So to the extent your question goes to the question, did any party contemplate there could be some hypothetical breach of the PSA, I think the answer to that is, well, a good layer also- Well, or even whether that my scenario would be a breach. Isn't that a question? And also the question of what does estate mean? Did it mean the estates of these parties at the time they executed the property settlement agreement, or was it looking into the future? Well, I think if we're interpreting the words in the contract of the PSA, we look to how the state of Arkansas defines the term estate, and it defines probate assets as those disposed of by will and survivorship property, including joint tenancy, as passing not through probate. It cannot be conveyed via will. But the property settlement didn't use either of those terms that you just mentioned. It used the term promise to make a will, and it used the term whereby. So through the will, whereby the will, property will be transferred. Therefore, the only property that can be transferred is property that can be transferred via will. Property that cannot be transferred via will is necessarily excluded from that provision of the contract. And frankly, I think that's a relatively basic proposition of probate law in the state of Arkansas. We cited the horn book on that, page 40 of our brief, Farrow versus Fuller, Arkansas appellate courts say property interests owned jointly pass outside of probate at the death of one of the co-tenants, and Judge Colleton in this circuit in 2014 in the Hall versus Metro Life case said a will cannot dispose of non-probate assets. So if you promise to make a will, you are promising to dispose of probate assets through that will, not non-probate assets. Let's focus just on the word estate. At least by its plain meaning and colloquial, it generally means all of your assets. That could be one colloquial meaning of the term estate. Okay. So wouldn't this be a promise to make a will by which you pass half of your total assets to the daughters? Correct. But only the assets that can be passed through that will. The inclusion of the term will. But wouldn't it imply that you're going to put all of your assets through probate via a will? I don't think that's how Arkansas law understands the probate assets. I'm trying to look more as to what the promise is at the time. It's a promise to make a will. Through which you will give half of your total assets. That can be passed through a will. Correct. Fine. I'm willing to accept that. Why doesn't that mean half of your total assets have to be sent through a will to the daughters? Because when you hold property jointly with a spouse, as here, those are not assets that can be passed through a will. But doesn't that, as Judge Shepard alluded to, doesn't that allow for the ability to get around it completely by setting up a couple of trusts and putting all your assets in the trust? And then it becomes illusory, right? If that were an argument the other side wanted to make, alleging that Mr. Crane breached his promise in the PSA for that reason, they could bring that claim against Mr. Crane and seek to litigate it. They certainly can't bring that allegation against Mrs. Crane, who both didn't breach the contract, as everyone agrees, and isn't a party to it. And further, to the extent the sophisticated parties who negotiated the PSA wanted additional asset protection for the daughters, they could have done a number of things differently. They could have set up lifetime trusts. They could have mandated beneficial interests. There are numerous ways to ensure that if you want particular dollar amounts to go to particular people pursuant to a PSA, you do that. But a promise to make a will whereby you will pass estate assets is not how you do that. Well, it can be done that way, though, right? You acknowledge it could be done that way. You could put half in there and leave it only to kids. And I don't know how Arkansas is on taking against the will, but leave enough if the wife objects to it. You could do it that way, right? Well, I think you could do it the way the parties here did, which is you make a will whereby the daughters will receive certain assets in trust and will receive a remainder interest in other assets that pass through the estate. But you cannot force someone, as a matter of Arkansas law, to transmit jointly held property through a probate court. That's just not how jointly held property passes. Jointly held property is entirely owned by both of the tenants who own it, which means at the time Mr. Crane died, it was entirely lawfully, as a matter of Arkansas law, Mrs. Crane's property. That is a non-probate asset according to Arkansas probate and estate law. I see I'm running low on time. With your permission, I'd like to reserve the remainder. Very well. Thank you, Your Honor. May it please the Court. I'd like to pick right up with the estate conversation, because I actually think that's the key of this issue. I think it's pretty straightforward. Estate in common parlance, when someone says estate, they mean your total assets. They don't mean the assets you happen to be passing by will that would require a very different construction of the property settlement agreement than it actually existed. I think the district resolved that fairly simply. My friend still can't answer what does estate mean under her definition. She should shift it immediately to probate assets. Now, of course, if the agreement said probate assets, we'd have a very different case. But it didn't. It was very simple. It said that we're identifying the subject of the subject of the agreement, which is the assets. You have to give at least half of those assets. We identified the beneficiaries, which are their four daughters. And we identified the vehicle where you do that, which is a will. That's very simple. It says you have to maintain a will where half of your total assets are passed. Now, what that might mean is because then your assets are encumbered, you might not be able to give away those assets through other property devices or mechanisms that have the type of purpose and function of a will, of giving that property to someone else because you've already agreed to encumber that property and give it to someone else. Well, counsel, you're leaving out life insurance paid to estate and life insurance and probate and a lot of other things. Now, I'd like to get back to the fundamental point of jurisdiction. Sure. In the Con V. Con case, we say the distribution of marital property is inextricably related to the divorce determination and issue of alimony. And therefore, the conclusion is this court has no subject matter jurisdiction.  Oh, you absolutely do, your honor. Absolutely. What do you do with those words from Con? I think you need to read them in context. And I think if you read that to say, I'm not much sure if you're referring to the probate exception or the domestic relations exception. I think this is more, but do either one. Go ahead. Okay. Well, I can do them both and I'm happy to. And you need to. Go ahead. So the Supreme Court in Ankenbrown was absolutely clear that when you're dealing with domestic does not apply that. Once you have a decree in place, at that point, you've respected the state's prerogative to input their public policy in saying, this is what the divorce should look like. This is what they've got. Ankenbrink is a 92 case, right? And Con's a 94 case. I think Con cites Ankenbrink. But Con, though, is very different. Oh, it cites Ankenbrink all over it. At a glance, counsel, we're bound by what the Con case says, not what Ankenbrink says. Surprising as that may be to be. Go ahead. No, but your honor, I think you can read Con in one of two ways. You can read it that way, which sets up a direct circuit conflict and it's basically flouting the Supreme Court's unequivocal statements of Marshall and Ankenbrink. Or you can read it, I think, in light of the context. In the Marshall case, there was nothing going on in any probate court or any state court of any kind. No, that's not right. In Marshall, there was an ongoing probate proceeding and the court was clear about that. Now, I want to be very clear, though, about Con. Con involved a situation where a party had allegations of misconduct that was resolved in the state divorce proceeding to divide the marital assets appropriately. The disappointed party then seats federal court review, asserting the same allegations that the state court resolved to try to effectively adjust and modify and nullify the state court decree by reshifting the allocation of property from the divorce decree. It was really no different at all than saying we want to modify or change the divorce decree. That is not what we're doing here. Here we have a settled divorce decree and there's a settled contract that was incorporated within that decree. And the question is, what are the rights under that contract? That is exactly what, and if you look at Ankenbrink, I'm not making this up, you'll see the language is right in there and same with Marshall. They said that when you have a set decree in state court, federal courts have absolute authority and, in fact, an unflagging obligation to decide the case and to set the party's rights. And they can do that even if it is affecting the ultimate. After Marshall, we did the Wallace case, which does the same thing again. On exactly the same fact pattern, Your Honor. And if you look at it, it's saying because this would have the effect of modifying or nullifying the decree. And again, we are not doing that here. What decree is being modified in this case? We have a set property settlement agreement. This was an independent contract. It happened to be incorporated in a divorce decree. And the question are, what are the third party's rights out of that decree? Now, if you look at this court's Lannon decision, which predated both Kahn and Wallace, and I think this court is bound normally by the first opinion that precedes the later ones. It said in this exact context, when you have a third party beneficiary that's claiming rights out of a contract and a decree, the court does have jurisdiction to resolve that. And again, I think if you read Wallace and Kahn differently, you're creating an intra-circuit split, you're creating a circuit split, and you're directly flouting unequivocal, unambiguous language of the Supreme Court. In fact, taking the same position that courts like the Ninth Circuit took in being reversed by the Supreme Court. Okay. Now, I let you off easy earlier. I need to ask you a very plain question. Like in Missouri, the state court keeps jurisdiction of these decrees for a long time, and I shouldn't be talking about this, but I'm going to go ahead. So how does that affect it, that they still have jurisdiction of all this stuff? It doesn't affect this at all, Your Honor. Not at all? Not at all. And Marshall made that clear too. In Marshall, the Texas statutes purported to say that once a probate's been opened, the probate court has exclusive jurisdiction. Marshall rejected that. Marshall said that state courts can't dictate the scope of federal jurisdiction, even when a state purports to exercise exclusive jurisdiction over the subject matter. Marshall said that federal law governs the scope of federal courts and what they can do and what they can't do. State courts don't have the power to do that. And I'll also add too that my friend is respectfully misreading state law. Keeping jurisdiction, saying I have the option of exercising jurisdiction over the parties to the divorce, does not bind this lawsuit. Neither the plaintiffs nor the defendants were parties to the divorce decree. The divorce decree says that the court, the chancery court, now the circuit court, retains jurisdiction for the purpose of adjudicating and awarding to the parties their interest and rights to and in the property and property rights set out in the property settlement agreement. Sure. To the parties. So why shouldn't the state court be taking care of all this? I'm sorry. Two main reasons. The first is it's to the parties. Now again, these are not the same parties. This is a different lawsuit inserting different rights between different litigants. The second is that even it's purporting to retain the option of exercising jurisdiction, it's sort of like if a federal court has a settlement and decides to incorporate the settlement to the decree, the court could exercise ongoing jurisdiction that would otherwise lack. That doesn't mean that it has exclusive jurisdiction. And a state court, again, does not have the authority to sort of reverse preempt federal law and say we are going to limit and carve out the scope of Section 1332A. That's Congress's decision. Congress could decide to say, you know what, any time a state court exercises jurisdiction or purports to exercise jurisdiction. Now for going to Congress in this area of the law is pretty dicey because Congress has, to my knowledge, not said anything about the domestic relations or probate since 1789. It's been there since 1800 or something. Go ahead. Well, it has been there for a while, Your Honor, but I think that's a point in our favor. And look at the Supreme Court's discussion of why these exceptions even exist. These are entirely atextual. If you read 1332A, you're not going to see anything about this. So they adopted a ratification theory. And if you can see, I think Marshall is being as polite as he can in saying that it is debatable whether the earlier understanding of English history that sort of gave rise to the exceptions is even correct. But they said Congress has ratified this when it changed the language in 1332A. Now ratification theory, and this is really critical, is saying that Congress is adopting the existing footprint of the exception. So you have to identify a case that they are adopting. But the Supreme Court's not held that, counsel, your last statement here. Oh, no, I think they have. And in fact, if you look at Marshall and Encombrant, they say, let's look at the cases that preexisted Congress's change in the jurisdictional language. So you don't expand it because if not, you're not ratifying something that doesn't exist. It has to preexist. OK, if you're not going to go back to the state court, you elect to proceed in federal court. And so you file a lawsuit for breach of the property settlement agreement. Why isn't that simply an action for money damages against the estate of Mr. Crane? Where do we, why do we get into constructive trust? What's the inequitable conduct on the part of the legal title holder to all these assets? Sure, Your Honor, under Arkansas law, you see this in Professor Brill's treatise. You see this in the Jaynes case. You see this in the George case. Arkansas has been clear that when a third party receives funds, even if they're innocent, even if they had nothing to do with it, but they have an equitable duty to reconvey the property to the proper owner if they've received it incorrectly through the wrongful disposition of another's property. That's exactly what you have here. Dude signed an agreement where he committed to say that at least half of my estate shall be devised by will to these people. And instead he engaged in different agreements that took the same asset that he already encumbered and gave it to someone else. I'm sorry. Well, but along those lines, I think Ms. Smith's argument was that this shouldn't be a breach of contract case against someone who was not a party and didn't breach the contract. Perhaps it's an unjust enrichment case. And I think she made two points. One, you can't get a constructive trust on a breach of contract. And two, you didn't bring an unjust enrichment case. It does seem odd to have a breach of contract case against a party who concededly didn't breach the contract and wasn't even a party to it. So on both points, Your Honor, first, if you look at our complaint, this is on page 18 of the joint appendix. We right away explain why the defendant is named as a defendant. And the breach of contract precipitates the rights in this case that we have against the defendant. It activates her equitable duties, Arkansas courts describe it, to reconvey the party to our side. Now, I think it's clear in our complaint that we pled it. And again, federal courts are bound by fact pleading standards. You don't have to even articulate the ultimate cause of action. In fact, the Supreme Court summarily reversed the Fifth Circuit in the city of Shelby case because they said even though the facts were pled, that in that case it was a 1983 case and the party didn't say 1983. The Supreme Court said you don't have to do that. It's fact pleading. But beyond that. Let me interrupt for just a second. Yes. Is your argument essentially that what I've pled is an unjust enrichment, the breach of contract is just background information for that? Well, no. I think it's twofold, Your Honor. First, unjust enrichment is the remedy against this defendant that is precipitated by Dudes breach. So I think they're interrelated. Now, the other point I do want to make, though. But what did Shirley Crane, what's the inequitable conduct, the wrongful conduct of this, of that party? Well, Your Honor, the wrongful conduct, and first of all, it doesn't have to be wrongful. As Professor Bowe makes absolutely clear, you can be an innocent recipient. As a restatement makes absolutely clear, you can be an innocent recipient. The point is that someone who does not have assets has assets that doesn't rightfully belong to them. And they're under an equitable duty to reconvey it to the proper owner. That's the way this works. So again, I think that we have pled what we needed to plead. But aside from that, under Rule 15b2 of the Federal Rules of Civil Procedure, this isn't cited in our brief because we're responding to an argument that's been crafted for the very- Well, I think you may have a point if you're talking about tangible assets. But when you're talking about money, and this order from the district court talks about impressing a constructive trust on dollars. Sure, Your Honor. Millions of dollars. And I question whether that's something that's even theoretically possible. Absolutely, Your Honor. It's an asset, and you can put a constructive trust on any asset. And by the way, most of the assets are stocks. Stock is property. That is, it is no different than impressing a constructive trust on a house or something else. Now, I do want to respond to Your Honor's other question about if you have, when you have an express contract, can you have an unjust enrichment remedy? The answer is absolutely yes. And again, this is an argument that my friend has raised predominantly in her reply briefs. It's debatably not properly before the court. But taking her own authority, there's a Campbell decision from the Arkansas Supreme Court that cites a decision of this court adopting this court's rationale that the only time an express contract precludes an unjust enrichment theory is when it's inconsistent with the contract. The logic of this doctrine is that usually if there's an express contract, the remedies are found within the contract. You can simply sue on the contract and get what you're entitled to. When that's not possible because the contract doesn't address the full subject or can't provide an adequate remedy, that's set aside. Now, look at this context. We have a decedent who breached a contract to devise assets to one person and said giving all the assets to someone else. You can't ask the decedent to correct the mistake because they're dead. You can't sue the estate for damages because the assets now are in someone else's hands. So this is why the Arkansas Supreme Court, for example, in the Jaynes case, was absolutely clear it's permissible to impose the trust. Look to the person who's holding the funds that they were not entitled to receive in the first place, whether they did it innocently or not. And if you look at Jaynes, there's no discussion saying that the third party who has the asset had it wrongfully or precipitated the breach or committed any fraud. You have two innocent sets here. You have the – Can I change the facts and pose a hypothetical I'd like to hear your response to? Let's say at the time of the divorce, dude was worth $1. And he made an agreement to leave 100% to the daughters. Twenty-seven years later, he remarries Shirley, I think it is. They develop a business worth $100 million that they jointly own. What happens – and does that mean Shirley is divested of the entire business? So the – I see my time – may I – Yes, sir. Yeah. So the answer is I think you need to know the facts on how was the business formed. Now, when you commit to say, I will give my estate, even 100% of my estate, and in fact, that's the fact pattern of both Gregory and Jaynes, two Arkansas Supreme Court cases. You can then preclude someone from even invoking an elective share under a statute that provides a statutory right that the Arkansas Supreme Court said is an important statutory right. But if the assets are already encumbered by a pre-existing contractual agreement, just as they were here, then in fact, yes, you've given away that stick of the bundle of rights. When you have property, you can do lots of things with it. You can spend it. You can divest it. You can give it away. You can assign it to an heir at death. Dude, in this case, gave away the stick in the bundle of rights for any asset, whether it expands or contracts, and his estate has to be at least half the estate has to go to the daughters. He gave away that stick to sign what an heir will receive for at least half of his property. So I think in your hypothetical, Your Honor, you have to look and say, now, if Shirley came into the relationship with her separate assets, and she's the one who founded the business, and that's why I equivocated a little saying I need to know the facts, but if Dude himself did the same thing through his own resources, his own ingenuity, he's the one that developed the assets, so it's part of his estate, then the contract is absolutely clear. My hypothetical is they do it jointly. If they do it jointly, then Shirley would be entitled to her equitable share of the estate, which would then not be part of Dude's estate. But the question under the agreement is what is Dude's estate? Now, this case has lots of potentially very interesting hypotheticals about deathbed devisements, all sorts of things like that. None of that's really an issue in the facts, though. The facts are very straightforward. His estate is absolutely clear. Did he give half of his estate by will to the appropriate beneficiaries? No, he didn't. So you say it's clear. What is it? What does that term estate mean? The estate means, as it does in Black's Law Dictionary and the Cambridge Dictionary and Investopedia and Arkansas State Law, any of a party's assets, real, personal, their entirety of their basically their assets. In fact, these millions of dollars of jointly owned assets that passed by right of survivorship. It absolutely applies to those, Your Honor, because, again, remember that... Well, that's not part of a probate estate. It doesn't matter. If the property settlement agreement had said probate assets, if it were framed differently, suppose it said you have to give at least half of any assets identified in a will to these beneficiaries, which would be a very odd thing to bargain for because it's so easy not to pass assets through will. But that's not what this says. This identifies the estate in its entirety. I think my friend's argument is sort of like saying, suppose you went to a car dealership and you said, here's a can of blue paint. I want you to paint at least half of the cars in this lot blue. Now, her argument would say that only applies to cars that are already blue, but that's not what that agreement says. It says take the entirety of the estate, make sure at least half of it is covered, and through a will you will give it to these people. So I think this is a very simple case under the straightforward, unambiguous language of the agreement. Now, does that mean that Dude was precluded from entering to some of those joint relationships? Absolutely. He couldn't have a contract that says, pay or deliver on death these assets to this person if it would end up delivering more than half of his estate to that person. The same exact thing is true with entering a tenancy by the entirety, a joint account with a right of survivorship. Your time's up. I'm sorry, Your Honor. Thank you. Thank you. Ms. Smith, we'll give you four minutes. Thank you, Your Honor. Rather than discuss a law review theory of jurisdiction, I'd like to talk about this court's binding precedence when it comes to the domestic relations exception. Judge Benton, as you pointed out, Kahn and Wallace make clear that the proper interpretation of the Supreme Court's domestic relations exception asks the question whether the cause of action is, quote, inextricably intertwined with the underlying domestic proceeding. In the context of an allegation that a PSA, which is the divorce itself, was breached, that is the heartland of inextricably intertwined with. And the First Circuit, in the Irish case, applying the same standard that this court used, calling it, quote, an inextricable relation at page 741, held that exactly this type of claim, breach of contract, of exactly this type of contract, a PSA entered into pursuant to a divorce, fell within the domestic relations exception to jurisdiction. There's simply no question that this type of breach of contract, the breach of a divorce contract, is a domestic relations exception. That's what Kahn says, that's what Wallace affirms, and any other holding by this panel would run contrary to the binding precedent you have to apply. The only argument the other side can come up with against that is the earlier decided Lannan case, which is about the breach of an insurance contract, not the breach of the underlying PSA. So I think that case is distinguishable. The later decided Wallace and Kahn, along with Irish that's consistent with it, make clear that in this context, on these facts, the domestic relations exception applies. I still have yet to hear a single argument by the plaintiffs in this case have standing. All of the misconduct alleged here is alleged against Mr. Crane. Nothing, as Judge Shepard pointed out, is alleged against Mrs. Crane. She isn't alleged to have done anything wrong. That's why there's no standing, because there's no causation. This court's cases have addressed causation and held that failing to establish it means there's no jurisdiction. That's not a nicety you tuck into the beginning of your opinions. That is a holding that you have found in cases like Miller and Eddings, in analogous cases. And further, Judge Shepard, to your point about the lack of misconduct and whether you can have a constructive trust absent misconduct, the Betts decision from the Arkansas Supreme Court makes clear that you cannot. To be unjustly enriched and seek a constructive trust remedy that arises from unjust enrichment, there must be a duty to convey the property that arises because it was acquired, quote, through fraud, duress, undue influence, mistake, breach of fiduciary duty, or wrongful disposition of another's property. There's no single allegation in this case, pled or proven, that Mrs. Crane qualifies as having engaged in any misconduct. If there was a breach here, it was Mr. Crane's breach. And if the plaintiffs wanted to bring a different type of action against Mrs. Crane, a quasi contract action of which there are numerous in Arkansas, they certainly could have tried to do that, but they didn't. And having failed to do it, they can't rely on that other type of claim to try and establish their jurisdiction in this court. If there are no further questions, I think there are numerous jurisdictional and merits reasons the court has to reverse either to dismiss or to try this again. Thank you. Very well. The court thanks both counsel for your appearance and argument and briefing. Interesting case. We'll wrestle with it and endeavor to issue an opinion in due course.